UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 15-68-01 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| MARCUS MILTON | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion to vacate, set aside, or correct sentence, filed pursuant to 28 U.S.C. § 2255 by Petitioner Marcus Milton ("Milton"). Record Document 74. Milton contends that his Sixth Amendment right to effective assistance of counsel was violated when appointed counsel failed to file a motion to suppress the evidence derived from the search of a vehicle. For the reasons enunciated below, Milton's section 2255 motion is **DENIED and DISMISSED WITH PREJUDICE.**[1]

## Factual Background

On December 4, 2014, Milton, who was a convicted felon, was on probation with the State of Louisiana. Early that morning, Louisiana probation officers arrived at his home in Shreveport, Louisiana to arrest him on a probation violation warrant. Officers took Milton into custody and then searched his home and a vehicle—a 1980 Chevrolet Caprice— that was parked outside of the residence. The vehicle did not belong to Milton, but his probation officer testified that she saw him driving it and generally "with it" on a few

---

[1] Because Milton's claims are contrary to law and plainly refuted by the record, no evidentiary hearing is required. See United States v. Green, 882 F.2d 999, 1008 (5th Cir. 1989). Milton's request for an evidentiary hearing is **DENIED.**

1

occasions leading up to the arrest date. Inside the vehicle, officers found traffic tickets recently issued to Milton as the driver of the car, his social security card, and an envelope addressed to him. In the unlocked trunk of the car, officers found a handgun next to a large speaker. The gun was loaded with hollow-point ammunition, but there was no round loaded into the chamber. The gun was manufactured by Tangolio in Italy and had traveled in interstate commerce. Law enforcement recovered DNA material on the grip of the gun, which contained DNA from at least two individuals. 94.7% of the population was excluded as the donor of the DNA material, but Milton could not be excluded.

A federal grand jury in the Western District of Louisiana returned a one count indictment charging Milton with unlawful possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g). Record Document 1. Milton pled not guilty and proceeded to a jury trial on October 5, 2015. After the Government presented its case-in-chief, Milton rested without presenting any evidence. Record Document 36. On day two of the trial, the jury returned a guilty verdict. Id. On February 4, 2016, this Court sentenced Milton to 120 months' imprisonment; judgment was entered on February 22, 2016. Record Documents 52 & 54. Milton timely appealed to the Fifth Circuit Court of Appeals, challenging the sufficiency of the evidence to sustain his conviction. On December 6, 2016, the Fifth Circuit affirmed the conviction. Record Document 73.

On January 25, 2018, Milton timely filed the instant motion under 28 U.S.C. § 2255.[2] In this motion, he asserts that defense counsel provided ineffective assistance of counsel

---

[2] After the Fifth Circuit issued its opinion affirming the district court's judgment, Milton had ninety days to seek a petition for writ of certiorari with the Supreme Court. See Sup. Ct. R. 13. His one-year limitation to file his § 2255 began to run only "upon expiration of the

because he failed to file a motion to suppress prior to trial. Milton later filed a supplement to his § 2255 wherein he argued that based on the Supreme Court's decision in Rehaif,[3] his conviction is null and void. Both issues will be addressed below.

## Law and Analysis

### I. 28 U.S.C. § 2255.

Under 28 U.S.C. § 2255, a prisoner may move to vacate, set aside, or correct a sentence imposed by a federal court when: (1) the sentence "was imposed in violation of the Constitution or laws of the United States[;]" (2) "the court was without jurisdiction to impose such sentence[;]" (3) "the sentence was in excess of the maximum authorized by law[;]" or (4) the sentence "is otherwise subject to collateral attack." United States v. Scruggs, 691 F.3d 660, 666 (5th Cir. 2012); 28 U.S.C. § 2255(a). "As the Supreme Court holds, '[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal.'" United States v. Cooper, 548 F. App'x 114, 115 (5th Cir. 2013) (internal quotations and citations omitted) (quoting Bousley v. United States, 118 S. Ct. 1604 (1998)). Rather, after a defendant is convicted and exhausts the right to appeal, a court is "entitled to presume that the defendant stands fairly and finally convicted." United States v. Shaid, 937 F.2d 228, 231–32 (5th Cir. 1991) (internal marks omitted) (quoting United States v. Frady, 102 S. Ct. 1584 (1982)).

---

time for seeking certiorari in the U.S. Supreme Court, even where . . . the appellant [did] not actually file[] such a petition." United States v. Gamble, 208 F.3d 536, 536 (5th Cir. 2000). Thus, the Court finds Milton's § 2255 petition was timely filed.

[3] Rehaif v. United States, 139 S. Ct. 2191, 2200 (2019).

### A. Ineffective Assistance of Counsel.

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Young, 77 F. App'x 708, 709 (5th Cir. 2003) (citing United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992)). Courts may consider claims of ineffective assistance of counsel brought for the first time in a § 2255 motion. See United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996). To successfully state a claim of ineffective assistance of counsel, the petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Failure to establish either prong of the Strickland test will result in a finding that counsel's performance was constitutionally effective. Id.; see also Tucker v. Johnson, 115 F.3d 276, 280 (5th Cir. 1997). The petitioner bears the burden of proof on both components of the Strickland standard. See Strickland, 466 U.S. at 687.

As to the first prong, in determining whether counsel's performance was deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal marks omitted). If a tactical decision is "conscious and informed . . . [, it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Crane v. Johnson, 178 F.3d 309, 314 (5th Cir. 1999). "Judicial scrutiny of counsel's performance

4

must be highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Thus, this Court's review "strongly presum[es] that counsel has exercised reasonable professional judgment." United States v. Payne, 99 F.3d 1273, 1282 (5th Cir. 1996) (quoting Lockhart v. McCotter, 782 F.2d 1275, 1279 (5th Cir. 1986)).

To establish the second prong of prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[4] Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. A defendant is not prejudiced if "the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." Lockhart

---

[4] The Strickland Court outlined the extent of prejudice that must be established by the defendant:
> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.
>
> . . .
>
> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> . . .
>
> When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.

Strickland, 466 U.S. at 691-95.

v. Fretwell, 506 U.S. 364, 372 (1993). Self-serving conclusory statements that the outcome would have been different "fall[ ] far short of satisfying Strickland's prejudice element." Sayre v. Anderson, 238 F.3d 631, 635 (5th Cir. 2001). Moreover, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998). The prejudice element requires more than a mere allegation; the defendant must affirmatively prove it. United States v. Thompson, 44 F.3d 1004, *2 (5th Cir. 1995). Because both prongs of Strickland must be satisfied, a court may reject an ineffective assistance of counsel claim upon an insufficient showing of either deficient performance or prejudice, without inquiry into the remaining prong. See Strickland, 466 U.S. at 689-94.

    1.    Motion To Suppress

In the instant case, Milton faults defense counsel for not filing a motion to suppress the firearm and ammunition seized from the Chevrolet Caprice. The Supreme Court has explained that "the failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel." Kimmelman v. Morrison, 477 U.S. 365, 384 (1986). Under Kimmelman, when the issue is an attorney's failure to litigate a Fourth Amendment violation, the defendant must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Id. at 375; see Jackson v. Thaler, 358 F. App'x 585, 586 (5th Cir. 2009) ("[a]n attorney's failure to file a motion

to suppress may constitute deficient performance if the evidence would have been suppressed as a result of the motion."). Kimmelman instructed that

> [a]lthough a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim like respondent's, a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence.

Id. at 382. The defendant bears the burden of proving the evidence "admitted at his trial would have been suppressed as a result of such a motion." Jackson, 358 F. App'x at 586.

To establish deficient representation by defense counsel, Milton must first prove that his Fourth Amendment claim would have been meritorious and that defense counsel acted deficiently in failing to pursue it. The reasonableness of counsel's action is assessed "from counsel's perspective at the time of the alleged error and in light of all the circumstances." United States v. Scott, 11 F.4th 364, 369 (5th Cir. 2021) (internal marks omitted); see also Martin v. Maxey, 98 F.3d 844, 848 (5th Cir. 1996) ("This circuit has held that counsel's failure to move to suppress evidence, when the evidence would have been suppressed if objected to, can constitute deficient performance (cause), unless counsel's failure was due to a tactical decision.") (abrogated on other grounds).

In this case, Milton is unable to establish a meritorious Fourth Amendment claim. As set forth above, he was on probation at the time he was found in possession of the gun. The governing law on the permissible extent of warrantless searches and the level of suspicion required—jurisprudence which was reasonably available to defense counsel—was not favorable to Milton. "An individual on probation does not have the same freedom

7

from governmental intrusion into his affairs as does the ordinary citizen." <u>State of Louisiana v. Malone</u>, 403 So. 2d 1234, 1239 (La. 1981); <u>see</u> also <u>United States v. Knights</u>, 534 U.S. 112, 122 S. Ct. 587 (2001). "While a warrantless search is generally unreasonable, a person on parole or probation has a reduced expectation of privacy under the Fourth Amendment of the U.S. Constitution and under La. Const. art. I, § 5." <u>State of Louisiana v. Haley</u>, 51,256 (La. App. 2 Cir. 5/24/17); 222 So. 3d 153, 160. This reduced expectation of privacy allows reasonable warrantless searches of a probationer's person and residence by a probation or parole officer. <u>Malone</u>, 403 So. 2d at 1239.

Here, assuming arguendo that Milton had a reasonable expectation of privacy in the Chevrolet Caprice, a proposition which has not been established, it would have been reasonable for defense counsel to conclude that the probation officers had reasonable suspicion to justify the search of the car. Indeed, the probation office had received a tip that Milton was "jacking" people and using a gun in the process: "TC left on tip line. Stated Milton is, quote, jacking, closed quote, people and they are afraid if we don't get him off the streets, he will get shot himself. The caller said they had seen him with a black handgun." Record Document 66, p. 67.[5] If Milton was accused of "jacking" people with a gun and had been seen with a black handgun, it was not unreasonable for defense counsel to surmise that that probation officers acted reasonably in searching for the gun in Milton's residence and the car with which he was associated.

---

[5] The defense understandably did not want this information brought before the jury, and the Court precluded the Government from mentioning it, as it was prejudicial. Instead, the parties agreed to simply state that the probation officers were at Milton's residence that morning to execute an arrest warrant without providing any additional background details.

Stated another way, Milton had a reduced expectation of privacy in the vehicle, assuming he had a constitutionally recognized privacy interest at all, and the probation officers' search of the car required only reasonable suspicion, which was present here. So long as there was reasonable suspicion to support the search, any motion to suppress would have been meritless. Counsel will not be deemed ineffective for failing to file a meritless motion. See Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (holding that an attorney cannot be deemed deficient for his failure to raise a "frivolous" issue); Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions").

As the Fifth Circuit has framed the issue, the question is not whether defense counsel made the right decision, assessed with the benefit of hindsight; the question is whether defense counsel acted reasonably. See Scott, 11 F.4th at 369 ("Scott's argument is better understood as a challenge to the correctness of Yazbeck's application of Fourth Amendment law" but "Scott fails to demonstrate" defense counsel's conclusions were unreasonable at the time.); see United States v. Dowling, 458 F. App'x 396, 401 (5th Cir. 2012) ("Because the suppression issue in this case is presented to us through the vehicle of an ineffective assistance of counsel claim, however, we do not end our analysis with the determination that, contrary to the district court's ruling, Dowling had a sufficiently meritorious suppression claim. We also ask whether counsel performed deficiently in failing to file the motion to suppress.") (internal citations omitted). Here, defense counsel did not act unreasonably in declining to file a motion to suppress under the circumstances. Milton has not carried his burden of establishing that a motion to suppress would have

been successful, and thus has not demonstrated that defense counsel's failure to file the motion constituted ineffective assistance. Because Milton fails under Strickland's first prong, the Court need not address whether Milton has satisfied Strickland's prejudice prong. His claim is without merit and is denied.

B.   Error Under Rehaif

In a supplemental filing, Milton relies on the Supreme Court decision in Rehaif v. United States to argue that his prosecution is null and void because the Government failed to prove both that he knowingly possessed a firearm and that he knew he belonged to the relevant category of persons prohibited from possessing a firearm. Rehaif, 139 S. Ct. at 2200. Record Document 86. Milton urges that his ten year sentence for possession of a firearm is thus a miscarriage of justice. The Government did not respond to Milton's Rehaif argument.

At trial in this matter, Milton did not request, and the Court did not provide, a jury instruction requiring the jury to find that Milton knew he was a felon when he possessed the firearm. In 2019, four years after the jury convicted Milton of unlawful possession of a firearm by a convicted felon, the Supreme Court issued the Rehaif decision. Neither the Supreme Court nor the Fifth Circuit Court of Appeals has addressed the issue of whether Rehaif is retroactively applicable to cases on collateral review.[6] However, the Second,

---

[6] In Palmer v. Johnson, 844 F. App'x 768, 769 (5th Cir. 2021), the Fifth Circuit did not reach the issue of whether Rehaif is retroactively applicable on collateral review, instead finding that "[r]egardless of whether Rehaif applies retroactively to cases on collateral review," the defendant was not entitled to relief because, contrary to his assertions, the Government is not required to prove a defendant's knowledge of the statutory prohibition, but rather only that a defendant knowingly possessed a firearm and knew of his relevant status at the time of possession. In Palmer, the defendant never argued he was unaware

Third, Sixth, Tenth, and Eleventh Circuit Courts of Appeals, in addition to numerous district courts, including district courts within the Fifth Circuit and the Western District of Louisiana, have determined that Rehaif is not retroactively applicable to cases on collateral review. See United States v. Scuderi, 842 F. App'x 304 (10th Cir. 2021); Mata v. United States, 969 F.3d 91, 94 (2d Cir. 2020); In re Sampson, 954 F.3d 159, 161 (3d Cir. 2020); Khamisi-El v. United States, 800 F. App'x 344 (6th Cir. 2020); In re Palacios, 931 F.3d 1314 (11th Cir. 2019); United States v. Kelley, No. 3:18-cr-00147, 2020 WL 2564679, at *2 (W.D. La. May 19, 2020); United States v. Benton, No. 3:12-cr-00118, 2020 WL 132276, at *2 (W.D. La. Jan. 9, 2020); United States v. Saenz, No. 00-09, 2020 WL 1321600, at *2 (S.D. Tex. Mar. 16, 2020); Baker v. United States, No. 17-CR-382, 2020 WL 1144632, at *3 (W.D. Tex. Mar. 9, 2020); Moore v. United States, No. 2:19-CV-2572, 2019 WL 4394755, at *1 (W.D. Tenn. Sept. 12, 2019).

In Palacios, the Eleventh Circuit analyzed the issue of whether Rehaif was retroactively applicable to cases on collateral review and stated:

> His claim relies solely on Rehaif, which did not announce a "new rule of constitutional law," but, instead, clarified that, in prosecuting an individual under 18 U.S.C. § 922(g) *and* 18 U.S.C. § 924(a)(2)—which provides that anyone who "knowingly violates" § 922(g) can be imprisoned for up to 10 years—the government must prove that the defendant knew he violated each of the material elements of § 922(g). Rehaif, 139 S. Ct. at 2195-96. Moreover, even if Rehaif had announced a new rule of constitutional law, as Palacios concedes in his application, it was not made retroactive to cases on collateral review by the Supreme Court.

---

of his immigration status, thus leading the Court to find he was not entitled to relief under § 2255. Id.

Palacios, 931 F.3d at 1315. This Court agrees with the reasoning of Palacios and the other cases referenced above. Section 2255 collateral relief based upon Rehaif is unavailable to Milton.

Notwithstanding, even if Rehaif is retroactively applicable, Milton would not prevail on this claim. To succeed on a Rehaif claim, the defendant "must show that any error under Rehaif actually prejudiced the outcome" of his case. United States v. Lavalais, 960 F.3d 180, 184 (5th Cir. 2020).[7] And, as the Lavalais court explained, "[d]emonstrating prejudice under Rehaif will be difficult for most convicted felons for one simple reason: Convicted felons typically know they're convicted felons." Id.; see also Greer v. United States, 141 S. Ct. 2090, 2095 (2021) ("as common sense suggests, individuals who are convicted felons ordinarily know that they are convicted felons."). As the Supreme Court observed,

> In a felon-in-possession case where the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb in trying to [prove] . . . that he did not know he was a felon. The reason is simple: If a person is a felon, he ordinarily knows he is a felon. Felony status is not simply the kind of thing one forgets. That simple truth is not lost upon juries. Thus, absent a reason to conclude otherwise, a jury will usually find that a defendant *knew* he was a felon based on the fact that he *was* a felon.

---

[7] Lavalais was on direct appeal, and the court reviewed for plain error. 960 F.3d at 184. In Greer v. United States, 141 S. Ct. 2090 (2021), the Supreme Court held that plain error is the correct standard of review, explaining that the general rule is that "a constitutional error does not automatically require reversal of a conviction. . . . [D]iscrete defects in the criminal process—such as the omission of a single element from jury instructions . . . do not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Greer, 141 S. Ct. at 2099-2100 (citations and internal marks omitted). The Court instructed that the omission of the Rehaif mens rea element from jury instructions "does not affect the entire framework within which the proceeding occurs." Id. at 2100.

12

Greer, 141 S. Ct. at 2097 (internal marks and citations omitted). Therefore, it is very difficult for a defendant to establish that the outcome of his trial would have been any different, i.e., the jury would have acquitted him, if only the Rehaif instruction had been given.

Here, Milton cannot establish that the jury would have acquitted him if a Rehaif instruction had been given. As an initial matter, Milton does not dispute the fact that he was a felon prior to the possession in this case. More importantly, he has not suggested he would have presented any evidence at trial to demonstrate that he did not know he was a felon at the time he possessed the gun. See Greer, 141 S. Ct. at 2098 (neither defendant "has argued or made a representation that they would have presented evidence at trial that they did not in fact know they were felons when they possessed firearms. Therefore, Greer cannot show that, but for the Rehaif error in the jury instructions, there is a reasonable probability that a jury would have acquitted him."). Milton's prior felony convictions, discussed below, are substantial evidence that he knew he was a felon. See id. (both defendants "had been convicted of multiple felonies. Those prior convictions are substantial evidence that they knew they were felons. Neither defendant has ever disputed the fact of their prior convictions.") Thus, Milton cannot establish prejudice for this Rehaif error.

The evidence introduced at trial established Milton's knowledge of his status as a convicted felon. The undisputed fact that Milton was a felon was not merely mentioned at trial, it was communicated to the jury multiple times, including from the defense itself. Milton, in fact, stipulated on day one of his jury trial that he had a prior felony conviction.

13

Record Documents 32 and 66, pp. 13 & 29. This stipulation was a strategic decision made to prevent the Government from introducing Milton's numerous convictions in order to establish his prohibited status under § 922(g), a required element of the offense. Thus, the jury was informed of Milton's felony conviction at the start of trial.

Further, during cross-examination of Milton's state probation officer, defense counsel himself repeatedly noted Milton's status as a convicted felon. He asked, "Now, when you became Marcus Milton's probation officer, he obviously had a felony? You had him for felony probation, correct?" Record Document 66, p. 69. After the probation officer answered yes, defense counsel then asked, "Am I correct that one of the things you tell your probationers when they go on probation is that if they've got any guns in the house, is to get them out. If they happen to possess any guns, to get rid of them; is that correct?" Id. A few moments later, defense counsel stated "Now, prior to Mr. Milton picking up his felony, which was the basis for being on probation with you . . . ." Id. at p. 72.

Subsequently, in closings, defense counsel argued that the jury had no way of knowing when Milton last handled the gun, stating, "If you want to believe that Mr. Milton at one point had had the gun or held the gun, it could have been before he was prohibited from having a gun." Record Document 67, p. 67. Then again, in closing instructions, the jury was reminded of Milton's prohibited status, as the jury instructions specifically stated that "the parties stipulated that the defendant had been convicted of a felony offense, and therefore, you must accept this element as proven." Record Document 39, p. 8.

Hence, the evidence introduced throughout trial establishes Milton's knowledge of his prohibited status and makes it unlikely a jury would have acquitted him even with a

Rehaif instruction. This conclusion is bolstered by Milton's criminal history itself. That is, a review of Milton's criminal history, and the evidence the Government could have introduced to prove it at trial, make it highly unlikely that a failure to prove Milton knew of his status as a felon affected the outcome of the proceedings. Milton's criminal record includes a 1996 federal jury trial conviction for conspiracy to commit bank robbery, aiding and abetting a bank robbery, and use of a firearm during a crime of violence. See 05:95-cr-50072-03. For those crimes, he was sentenced to a total of ten years' imprisonment. See Record Document 56, pp. 5-6. Milton was released from the Bureau of Prisons in March of 2005, but was arrested less than two months later for unlawful possession of a firearm by a convicted felon. See 05:05-cr-50047-01. He was convicted and sentenced to fifty-seven months' imprisonment for that federal conviction. See Record Document 56, pp. 6-7. In 2011, Milton pled guilty to another felony offense—aggravated flight from an officer—and was sentenced to one year in state prison. See id. at p. 7. Then, in 2013, Milton pled guilty to another felony charge, this time possession of a Schedule IV controlled dangerous substance. Id. at p. 8. For this conviction, he was sentenced to two years' imprisonment, which was suspended, and two years of supervised release. He was on probation for this crime when he committed the instant offense.

Given the severity of this criminal history, and the significant lengths of time Milton has spent incarcerated, there is not a "reasonable probability" that he did not know he was a felon at the time he possessed the firearm in this case. Indeed, Milton's sentences total nearly fifteen years of prison. Thus, it is improbable that Milton would not have remembered being convicted of a felony. Lastly, the fact that Milton was actively on

probation at the time he possessed the instant firearm further demonstrates the unlikelihood that Milton did not know he had a felony conviction.[8]  Thus, Milton cannot demonstrate that any prejudice occurred from a Rehaif error.

As set forth above, even under a plain error standard of review, Milton would be unsuccessful presenting this argument on appeal.  However, plain error is not available to him because "the plain error standard of review is an instrument of direct review," meaning on direct appeal from the district court.  Hernandez v. Thaler, 440 F. App'x 409, 414 (5th Cir. 2011).  "Because it was intended for use on direct appeal, however, the 'plain error' standard is out of place when a prisoner launches a collateral attack against a criminal conviction after society's legitimate interest in the finality of the judgment has been perfected by the expiration of the time allowed for direct review or by the affirmance of the conviction on appeal."  United States v. Frady, 102 S. Ct. at 1592.  In order to "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  Id. at 1593.  Hence, Milton faces a tougher standard, as he failed to preserve an objection to the jury instructions in the district court and did not raise it on appeal; thus, his claim implicates the rule of procedural default.  The appropriate standard of review for collateral relief is the "cause and actual prejudice" standard.  Id. at 1594.  To prevail, the defendant must demonstrate both (1) cause excusing his procedural default

---

[8] While this evidence was not introduced to the jury at trial, the Court may still consider it in the context of the instant motion, for in determining whether prejudice is present, the Court may consider the entire record, not just the record from the particular proceeding where the error occurred. See Greer, 141 S. Ct. at 2098.  Furthermore, it "is not [] realistic" "to assume a scenario where the proper instruction was given, but where the Government did not introduce additional evidence to prove that [a defendant] knew he was a felon." Id.

and (2) actual prejudice resulting from the complained-of error. Frady defined actual prejudice as requiring "not merely that the errors at his trial created a possibility of prejudice, but that they worked to [the defendant's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 1596.

In the case at bar, Milton has not demonstrated cause for his failure to raise this claim on direct appeal. When a claim "is so novel that its legal basis is not reasonably available to counsel," then there may be cause for a procedural default. Bousley, 118 S. Ct. at 1622. However, that is not the case here. The question presented in Rehaif had been repeatedly litigated in the appellate courts and was not a novel issue. Moreover, cause will not be found simply because "a claim was unacceptable to that particular court at that particular time." Id. at 1623. Milton cannot establish cause for his default.

Milton's only remaining means of obtaining review of his claim is if he could establish actual innocence. To establish actual innocence, he "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at 1611. "[A]ctual innocence means factual innocence, not mere legal insufficiency." Id. Milton cannot meet this standard, as the evidence discussed above establishes that he knew he was a felon, and he has not introduced anything else that casts doubt on the evidence or the jury's verdict.

Accordingly, Milton has failed to show that Rehaif is retroactively applicable to cases on collateral review. Even if Rehaif were retroactively applicable, Milton has not shown cause for his procedural default nor has he established actual innocence. His Section 2255 motion is denied on this ground.

## Conclusion

For the foregoing reasons, based on the record and the relevant jurisprudence, this Court finds that Milton has failed to establish his counsel's deficient performance under Strickland. Milton has also failed to establish entitlement to relief under Rehaif. Therefore, his § 2255 motion [Record Document 74] be and is hereby **DENIED** and **DISMISSED WITH PREJUDICE**. Because Milton's claims are contrary to law and refuted by the record, no evidentiary hearing is required.

Pursuant to Rule 11(a) of the Rules governing § 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. Unless a Circuit Justice or a Circuit or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeal. In this case, a certificate of appealability is **DENIED** because Milton has failed to demonstrate a substantial showing of the denial of a constitutional right.

**THUS DONE AND SIGNED** this 3rd day of February, 2022.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE